UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| EDUARDO E.H. HERNANDEZ,<br>Petitioner,<br>v.<br>M.S. EVENS,<br>Respondent. | ) | 1:08-CV-00945 AWI JMD HC<br><br>FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS<br><br>OBJECTIONS DUE WITHIN THIRTY (30) DAYS |

Eduardo E.H. Hernandez (hereinafter "Petitioner") is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus.

**PROCEDURAL HISTORY**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a 2005 jury verdict finding Petitioner guilty of first degree murder (Cal. Penal Code § 187). (Answer at 1; Pet. at 3.) The jury found true the special allegation that Petitioner committed the murder while engaged in an attempted robbery. (Answer at 1; Lod Doc. 1.) The jury also found true sentence enhancements relating to the intentional discharge of a firearm that proximately causes great bodily injury (Cal. Penal Code § 12022.53(d), (e)(1)) and that the crime was committed for the benefit of, at the direction of, or in association with a criminal street gang (Cal. Penal Code § 186.22(b)(1)). (Lod. Doc. 1.) The trial court sentenced Petitioner to life imprisonment without the possibility of parole and to a consecutive prison term of twenty-five year to life. (Answer at 1.)

Petitioner appealed his conviction to the California Court of Appeal, Fifth Appellate District, which issued a reasoned opinion on October 27, 2006, affirming Petitioner's conviction. (*See* Lod. Doc. 2.)

Petitioner filed a petition for review with the California Supreme Court, which denied the petition on February 7, 2007. (Lod. Docs. 3, 4.)

Petitioner subsequently filed petitions for writ of habeas corpus with the Kings County Superior Court (Lod. Doc. 7), the California Court of Appeal (Lod Doc. 8), and the California Supreme Court (Lod. Doc. 5). The State courts denied the petitions for writ of habeas corpus. (Answer Ex. B; Lod. Docs. 9, 10).

On July 7, 2008, Petitioner filed the instant federal petition for writ of habeas corpus.

On October 9, 2009, Respondent filed an answer to the petition, to which Petitioner filed a traverse on November 9, 2009.[1]

## FACTUAL BACKGROUND[2]

### A. Background

> Defendant, Jose Guzman, Jose Perez, and Laura Holt were all charged with the first degree murder of Paul Lemos. After being arraigned, Holt wanted to talk to law enforcement officers. She reached a plea agreement with a prison term of 13 years in exchange for her truthful testimony at the trials of her codefendants. Guzman and defendant were tried together and both were convicted of murder and additional allegations. Perez was tried separately and was convicted of first degree murder, two special circumstances, plus firearm and gang allegations.[[3]]The jury was told that Holt was an accomplice as a matter of law and that her testimony required corroboration.

### B. Accomplice Testimony

> Laura Holt was with defendant, Perez, and Guzman on December 29, 2003. They spent part of the evening drinking at someone's house in Laton, and then Holt drove the group in her car to a basketball game in Riverdale. As it turned out, they did not attend the game and after a short period of time they returned to Laton and went to the home of Jose Rodriguez (a.k.a.Huero).
>
> Holt, defendant, Guzman and Perez smoked methamphetamine with Rodriguez, joined by Anthony Ruelas (a.k.a.Crack). Defendant, Guzman and Perez began talking about robbing someone. Guzman asked Rodriguez for a gun. Rodriguez did not want to give it to him. Guzman told Rodriquez that he was not going to shoot the gun; he only needed it to scare someone while he robbed them. Rodriguez gave

---

[1] The Court notes that it has previously found that all five claims currently raised in the petition are exhausted. (Court Docs. 17, 19.) There is no allegation that the petition is untimely.

[2] These facts are derived from the California Court of Appeal's opinion issued on October 27, 2006. (*See* Lod. Doc. 2.) Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, a determination of fact by the state court is presumed to be correct unless Petitioner rebuts that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); *Moses v. Payne*, 555 F.3d 742, 746 n. 1 (9th Cir. 2009).

[3] Guzman (F048683) and Perez (F048495) are the subjects of separate appeals.

the gun to Guzman.

At trial Holt was shown a photograph of a gun, and she testified that the gun looked like the gun Rodriguez gave to Guzman.

Holt, defendant, Guzman and Perez left in Holt's car. Holt was driving. They drove around trying to decide where to go to rob someone. While driving around, Perez, Guzman and defendant talked about the robbery. They discussed stealing a vehicle with a stereo system. They drove to Hanford to find their target. They drove around the Hanford mall parking lot to look at cars. They did not find anything that suited their purposes.

Discussions continued, and Perez said he wanted to do a carjacking. Defendant wanted to do a home invasion. Guzman did not join in this discussion. Guzman and Perez argued over who was going to possess the gun. Guzman finally let Perez have his way and possess the gun. The gun had been loaded previously in the car by Guzman.

The group then drove to a residential area and looked around. Again finding nothing, they returned to the area of the mall. They saw a blue Chevrolet truck, lowered, with tinted windows, driven by Paul Lemos, the victim. Defendant liked the truck and told Holt to follow it. She did. Holt parked her car nearby while Lemos drove through the drive-through at Taco Bell and purchased food.

Holt continued to follow the truck. At one stop light, the victim's truck was next to another nice truck. The group decided that the victim's truck was the nicest. Perez got up and started to go towards the truck when Guzman and defendant told him to get back in the car.

They followed the victim in his truck until the victim arrived at his house. Holt backed the car up and stopped at the corner. She could not see the truck from her location. Perez and defendant jumped out and ran towards the truck. Defendant told Holt to follow them after they obtained the truck. Guzman got out shortly afterwards and stood near the car. Holt was not sure if Guzman stayed near the car because she was feeling ill from the drugs and wasn't paying attention. She kept the engine running.

Holt heard two gunshots. Guzman got in the car. Perez and defendant ran to the car and got in. They told her to take off. She did.

In the car, defendant said that he was punching the victim. The victim was scared and crying. Defendant told Perez he should have used his hands instead of a gun to take things from the victim. Perez stated that he thought he shot the victim in the shoulder and missed with the other two shots. Defendant said that Perez should have taken the victim's wallet while defendant was punching him.

Holt drove the group back to Laton. She was told not to say anything. Holt dropped Perez off at his house so he could change his clothes and wash up to get rid of any gun residue. Holt, defendant, and Guzman drove back to Rodriguez's home and again used drugs. Defendant and Guzman told Rodriquez he needed to get rid of the gun. Perez showed up shortly thereafter. The group stayed there about an hour. During this time the gun was returned to Rodriguez. They then decided they would go to Fresno to try and find some more drugs. Their trip was unsuccessful and they returned to the home of Rodriguez and used more drugs.

Holt, defendant, Guzman and Perez left in Holt's car. They were stopped by police. When they were stopped, defendant ran and was not captured. The others discussed their alibi. They decided they would say that Holt had picked them up from City Lights in Fresno. Guzman came up with a name he would use. Officers removed them individually from the car and separated them. They were eventually allowed to leave. Holt went with Guzman to his brother's house.

Two months before trial Holt was in a holding cell. Perez, defendant, and Guzman were being held in the same area. Perez asked Holt to take back her deal and not testify. Guzman told her he wanted to marry her.

C. Nonaccomplice Evidence

Christina Padilla knew the victim. On December 29, 2003, she had a cellular telephone conversation with Lemos while she was riding in a van. She heard a loud sigh and Lemos stopped talking. She heard the beeping sound of his truck that is made when the door is open and the keys are left in the ignition.

Donaldson lived next door to Lemos. On the night of December 29, 2003, she was outside on her front porch. She heard someone say, “Fuck you bitch, you fuckin' scrap.” She looked and saw two men standing near each other by the back of the truck. One of the individuals had a gun pointed sideways at Lemos. Donaldson went inside of her house. She heard three shots. She looked out and saw Lemos fall to his knees in the driveway; the other individuals ran away. She heard two car doors and heard a car “screech off.” She came out of her house and saw Lemos on the ground holding the back of his head and making moaning sounds.

When Donaldson first spoke to an investigator that evening, she told them she did not see anything. She was afraid. Her husband told her to tell the truth, and later that evening she told officers what she had seen.

Donaldson identified Perez as the person with the gun she saw standing by the victim's truck at the time he was shot.

Shirley Villagran was driving by the park. She drove further down the street and parked on the street near the victim's house so she could talk with a friend in the car. She saw a small white car parked on the corner. She heard two gunshots. She saw two people run to the car and get in. The car took off with the headlights off. Villagran followed them trying to get their license number. She stopped following the car when the car turned left towards Laton. She went back to the area and told law enforcement officers what she had seen.

Hanford police investigator Richard Pontecorvo responded to the scene of the murder.[4] The victim's truck was parked in the driveway. The driver's door was open and there was a Taco Bell bag on the ground, as well as a Taco Bell cup. A cellular telephone was on the ground by the truck. They keys were in the ignition of the truck. The stereo system in the truck was not missing. There were no shell casings in the area.

In the early morning hours of December 30, 2003, Pontecorvo drove to Laton looking for the vehicle. He observed a vehicle that matched the description of the vehicle leaving the crime scene. Pontecorvo followed the vehicle. The occupants of

[4]The victim did not die at the scene, he died several days later.

the vehicle kept looking back at Pontecorvo as he followed it. Pontecorvo stopped the vehicle. One person fled the scene. Pontecorvo removed the other three occupants of the car. Holt was the driver of the car. Guzman was seated in the front passenger seat; he misidentified himself as Alex Gutierrez. Perez was in the rear passenger seat. Holt said that she had picked up the men from City Lights in Fresno.

Lemos died from a single gunshot wound to the left side of his head. In addition, he had swelling to his right eye that was not consistent with a gunshot wound but was consistent with blunt force trauma. A deformed slug was recovered from the victim's brain.

Several days after the murder, a search was conducted at the home of Rodriguez. Rodriguez, Manuel Tapia and Raul Gonzalez were present when the search occurred. Officers found weapons, ammunition, drugs, and drug paraphernalia. Rodriquez told officers that he gave the gun to Guzman for protection but the gun was never returned to him.

The home of Robert Gonzalez was searched. The weapon was not found. Several days later Robert Gonzalez turned a weapon over to law enforcement. Robert Gonzalez is the brother of Raul Gonzalez and the uncle of Manuel Tapia, one of the individuals at the home of Rodriquez when it was searched for the weapon. Robert Gonzales said he had received an anonymous call regarding the location of the gun. He went to the location and found the gun in a paper bag by the side of the road. He refused to provide any further details about the gun. Robert Gonzales testified that he received a call and the unidentified male caller asked him if he was going to testify. The caller said he knew where he lived. When the gun was first turned in, Robert Gonzalez said he got the gun from Manuel Tapia.

A criminalist test-fired the gun turned in by Robert Gonzalez. Because the gun was worn and old, the criminalist was not able to get nice, crisp characteristics to compare to the fragment recovered from the victim, but the bullets agreed as far as land, grooves and twists, and the bullet retrieved from the victim was consistent with being fired from the gun.

Jose Rodriquez testified that he did not know Guzman, did not know Manuel Tapia, and did not give Guzman a gun. He additionally testified that he did not know Perez or Guzman even though there were pictures of them found in his trailer. He admitted he was convicted of possession of methamphetamine for sale and possession of a firearm as a result of the search of his house for the gun. Manuel Tapia was present when the search was conducted.

Pontecorvo said that when officers searched the home of Jose Rodriquez, Rodriquez said that Guzman had not given the gun back to him.

On February 22, 2004 officers went to the home of Mimi Pina to serve an arrest warrant for defendant and Guzman. They knocked on the door. Mimi answered and said Guzman was inside with defendant. Officers posted at the rear of the house apprehended defendant and Guzman after they ignored orders to go to the ground and tried to escape.

Mimi Pina testified that she was living with defendant and Guzman on February 22, 2004. Luis Hernandez is the father of her children and also the cousin of Guzman and defendant. Pina was having a relationship with Guzman at this time. Prior to the arrest of Guzman and Hernandez, Pina had several conversations with them. Roxanne, the mother of defendant's children, was present during some of the

conversations.

During the conversations, defendant told them that Perez shot the person in the truck and Holt drove them. Guzman said that Perez liked the victim's truck and Perez told Holt to follow it. Perez said he was going to take the victim's money and his truck. Guzman also said that Perez shot the victim. Pina was told that Perez told the victim to give him all of the money and the victim asked not to be killed. The victim reached for something and defendant said the victim was reaching for a gun. Perez shot the victim. When Guzman talked about the incident, he cried and said he did not do it.

Numerous law enforcement officials described contacts with defendant, Guzman, and Perez involving the Laton Bulldogs gang and their membership in the gang.

Ralph Paolinelli, an expert on the Laton Bulldogs gang, testified that "scrap" is a term used by Norteno Bulldogs to disrespect Surenos. The Laton Bulldogs are rivals with both the Sureno and Norteno gangs. It was Paolinelli's opinion that defendant, Perez, and Guzman are members of the Bulldog gang.

An officer searched the victim's bedroom, finding nothing associated with any type of gang affiliation.

(Lod Doc. 2, Opinion fo the California Court of Appeal, at 2-9.)

## DISCUSSION

### I. Jurisdiction

A person in custody pursuant to the judgment of a state court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. While Petitioner is currently incarcerated at Salinas Valley State Prison in Soledad, California,[5] Petitioner's custody arose from a conviction in the Kings County Superior Court. (Pet. at 1-2.) As Kings County falls within this judicial district, 28 U.S.C. § 84(b), the Court has jurisdiction over Petitioner's application for writ of habeas corpus. *See* 28 U.S.C. § 2241(d) (vesting concurrent jurisdiction over application for writ of habeas corpus to the district court where the petitioner is currently in custody or the district court in which a state court convicted and sentenced the petitioner if the state "contains two or more Federal judicial districts").

---

[5]The city of Soledad falls within Monterey County, which is within the jurisdiction of the Northern District of California. *See* 28 U.S.C. § 84(a).

**II. ADEPA Standard of Review**

On April 24, 1996, Congress enacted the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's enactment. *Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996), *overruled on other grounds by Lindh*, 521 U.S. 320 (holding AEDPA only applicable to cases filed after statute's enactment)). The instant petition was filed in 2008 and is consequently governed by the provisions of the AEDPA. *See Lockyer v. Andrade*, 538 U.S. 63, 70 (2003). Thus, the petition "may be granted only if [Petitioner] demonstrates that the state court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1))*, overruled in part on other grounds*, *Hayward v. Marshall*, 603 F.3d 546, 555 (9th Cir. 2010) (en banc); *see Lockyer*, 538 U.S. at 70-71.

Title 28 of the United States Code, section 2254 remains the exclusive vehicle for Petitioner's habeas petition as Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. *See Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1126-1127 (9th Cir. 2006) *overruled in part on other grounds*, *Hayward*, 603 F.3d at 555. As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Lockyer*, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id*. (quoting *Williams*, 592 U.S. at 412). "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Id*. Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Lockyer*, 538 U.S. at 72, (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question

of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Lockyer*, 538 U.S. at 72. "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the State court's application of clearly established federal law was "objectively unreasonable." *Id*. at 409.

Petitioner bears the burden of establishing that the state court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. *Clark v. Murphy*, 331 F.3d 1062, 1072 (9th Cir. 2003) ("While *only* the Supreme Court's precedents are binding on the Arizona court, and only those precedents need be reasonably applied, we may look for guidance to circuit precedents") (emphasis in original); *Duhaime v. Ducharme*, 200 F.3d 597, 600-601 (9th Cir. 1999) ("because of the 1996 AEDPA amendments, it can no longer reverse a state court decision merely because that decision conflicts with Ninth Circuit precedent on a federal Constitutional issue . . . This does not mean that Ninth Circuit caselaw is never relevant to a habeas case after AEDPA. Our cases may be persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and also may help us determine what law is 'clearly established'"). Furthermore, the AEDPA requires that the Court give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). A federal habeas court is bound by a state's interpretation of its own laws. *Souch v. Schaivo*, 289 F.3d 616, 621 (9th Cir. 2002).

\\\

The initial step in applying AEDPA's standards is to "identify the state court decision that is appropriate for our review." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). Where more than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last reasoned decision. *Id*. (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) for the presumption that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same ground as the prior order). Thus, a federal habeas court looks through ambiguous or unexplained state court decisions to the last reasoned decision to determine whether that decision was contrary to or an unreasonable application of clearly established federal law. *Bailey v. Rae*, 339 F.3d 1107, 1112-1113 (9th Cir. 2003). Here, Petitioner presented various claims to the Kings County Superior Court and the California Court of Appeal, which issued a reasoned denial of the claims presented to them. Petitioner raised all of his claims to the California Supreme Court, which summarily denied Petitioner's claims. Thus, the Court looks through that decision to the last reasoned decision; namely, that of the California Court of Appeal and the Kings County Superior Court. *See Ylst v. Nunnemaker*, 501 U.S. at 804.

## III. Review of Petitioner's Claims

The petition for writ of habeas corpus contains five grounds for relief. In his first and third ground for relief, Petitioner contends that his Sixth Amendment rights were violated by ineffective assistance of trial counsel. In his second ground for relief, Petitioner contends that his constitutional rights were violated by the trial court's issuance of California Jury Instruction Criminal (CALJIC) No. 6.11. Petitioner's last two grounds for relief alleges that the prosecutor knowingly used perjured testimony and that the trial court abused its discretion by admitting evidence of Petitioner's juvenile record.

### A. Grounds One and Three: Ineffective Assistance of Counsel

In Grounds One and Three, Petitioner alleges that trial counsel provided ineffective assistance of counsel for various reasons. Encompassed in the allegation that Petitioner's Sixth Amendment right was violated are Petitioner's specific complaints regarding trial counsel's failure to make appropriate objections and arguments relating to the admission of the gun, numerous other actions Petitioner faults counsel for not undertaking, and the trial court's denial of Petitioner's

motion for a new trial.

An allegation of ineffective assistance of counsel requires that a petitioner establish two elements–(1) counsel's performance was deficient and (2) petitioner was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687(1984); *Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994). Under the first element, the petitioner must establish that counsel's representation fell below an objective standard of reasonableness, specifically identifying alleged acts or omissions which did not fall within reasonable professional judgment considering the circumstances. *Strickland*, 466 U.S. at 688; *United States v. Quintero-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential and there exists a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 687; *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994).

Additionally, Petitioner must show that counsel's errors were so egregious that the petitioner was deprived of the right to a fair trial, namely a trial whose result is reliable. *Strickland*, 466 U.S. at 687. To prevail on the second element, the petitioner bears the burden of establishing that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Quintero-Barraza*, 78 F.3d at 1348 (quoting *Strickland*, 466 U.S. at 694). A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. *Strickland*, 466 U.S. at 697. Since prejudice is a prerequisite to a successful claim of ineffective assistance of counsel, any deficiency that was not sufficiently prejudicial to the petitioner's case is fatal to an ineffective assistance of counsel claim. *Id*.

The Court notes that Petitioner contends that his Sixth Amendment rights were violated as he and his trial counsel had a breakdown in their attorney client relationship. Petitioner alleges that as a result of the breakdown, trial counsel did not request or subpoena witnesses to contradict prosecution witnesses, did not challenge recanted and perjured testimony, and allowed co-defendants Perez and Guzman to present conflicting defenses. The Ninth Circuit has rejected the proposition that the Sixth Amendment provides a criminal defendant with the right to have a "meaningful attorney-client

relationship." *Morris v. Slappy*, 461 U.S. 1, 13-14 (1983); *see Frazer v. United States*, 18 F.3d 778, 783 (9th Cir. 1994) (quoting United *States v. Schaff*, 948 F.2d 501, 505 (9th Cir. 1991) in noting that while a criminal defendant does not have a right to a rapport with his attorney, a defendant's Sixth Amendment right to counsel is violated where counsel engaged in a "verbal assault manifesting explicit racial prejudice and threatening to compromise the client's rights"). Rather, the Supreme Court has noted that:

> [I]n evaluating Sixth Amendment claims, the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such. Thus, while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.

*Wheat v. United States*, 486 U.S. 153, 159 (1988) (citations and internal quotation marks omitted) Thus, the Court now addresses the specific allegations of ineffective assistance contained in the petition for writ of habeas corpus.

***1. Argument Regarding Admission of the Gun***

Petitioner contends that trial counsel failed to make appropriate objections and arguments at trial regarding the admission of the gun. The California Court of Appeals was the last State court to issue a reasoned decision in this case. The appellate court found that as the gun was admissible under California Evidence Code section 352, Petitioner could not establish prejudice. The Court does not find this conclusion to be an objectively unreasonable application of *Strickland* as Petitioner's claim cannot succeed as in light of the California Court of Appeal's finding the gun would not have been excluded under California law. (Lod. Doc. 2 at 16.) As a federal habeas court is bound by a state court's interpretation of its law, the Court must accept the Court of Appeal's finding that the gun was admissible pursuant to California's law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam) (stating that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus"); *see also Musladin v. Lamarque*, 555 F.3d 830, 838 n.6 (9th Cir. 2009) (finding that habeas court must presume that state courts know and follow the law and that state court decisions be given the benefit of the doubt under AEDPA deferential standards). Consequently, Petitioner's claim of

ineffective assistance of counsel fails, and the State court's denial of the claim is objectively reasonable, as any objection or argument that trial counsel would have raised regarding the admission of the gun was futile.

***2. Conflicting Defenses***

Petitioner makes several allegations that trial counsel provided ineffective assistance by permitting the co-defendants to present conflicting defenses. The last State court to have issued a reasoned decision in this case was the Kings County Superior Court, which found that Petitioner had failed to state a claim for ineffective assistance of counsel. (Answer Ex. B). The Court does not find this to be an unreasonable application of *Strickland* as Petitioner has provided no evidentiary support or specific argument that would entitle Petitioner to habeas corpus relief on this allegation. Petitioner does not explain how Petitioner and co-defendant presented conflicting defenses. Rather, the only allegation Petitioner makes regarding co-defendant's defense is that co-defendant attempted a sympathy defense. Furthermore, the record of the trial reveals that Petitioner's defense was to attack the strength of the prosecution's case including the credibility of prosecution witness. (Rep. Tr. at 1780-1796.) Petitioner's defense focused on witness testimony establishing that the accomplice did not initially name Petitioner, the shakiness of Detective Pontecorvo's in field identification, and that the confessions did not inculpate Petitioner. (Id. at 1787-1789, 1792-1794.) Co-defendant likewise focused his entire defense on the strength of the prosecution case, emphasizing the burden of proof in their closing arguments. (Id. at 1796-1813.) As the defenses presented by co-defendant did not conflict with Petitioner's defense, the Court finds that Petitioner cannot establish deficiency or prejudice and thus this claim cannot be a basis for habeas corpus relief.

***3. Failure to Challenge Inconsistent Statements By Prosecution Witnesses***

Petitioner contends that trial counsel allowed Diana Donaldson and Shirley Villagran to give recanted and perjured testimony. (Traverse at 12-17.) Petitioner additionally contends that trial counsel failed to thoroughly cross examine Detective Pontecorvo with respect to his mistaken in field identification. The last State court to have issued a reasoned decision in this case was the Kings County Superior Court, which found that Petitioner had failed to state a claim for ineffective

assistance of counsel. (Answer Ex. B). The Court does not find the King County Superior Court's decision to be an unreasonable application of *Strickland*.

Petitioner contends Ms. Donaldson gave inconsistent statements to the police regarding her location when the shooting occurred, first telling police that she was inside her home and then stating that she was outside. Additionally, Petitioner faults trial counsel for not cross examining Ms. Donaldson on her previous statement to police that she saw a "tall, skinny guy" next to the shooter. (Traverse at 15.) The Court finds that these alleged deficiencies are not prejudicial as this information was presented to the jury. During direct examination by the prosecutor, Ms. Donaldson admitted that she was not completely honest with the police when she first spoke to them and that she changed her mind after talking with her husband. (Rep. Tr. at 702-703.) On cross examination, Petitioner's counsel elicited from Ms. Donaldson her admission that she lied about her observations of the crime to the police on two separate occasions. (Id. at 724-27.) Counsel for co-defendant elicited Ms. Donaldson's statement that she did not give her current version of events to the police until they confronted her with their suspicion that she was not being truthful. (Id. at 733.) Furthermore, the Court notes that Ms. Donaldson's testified that a taller, skinny man was standing next to the shooter. (Id. at 707-708.) Thus, no prejudice resulted from trial counsel's performance with regards to Ms. Donaldson as all the information Petitioner complains of were presented to the jury.

Similarly, Petitioner contends that during another co-defendant's trial, Ms. Villagran testified that she saw only one person get into the car while she testified at Petitioner's trial that two suspects got into the car. (Traverse at 16-17.) The Court notes that Petitioner faults counsel for not requesting a subpoena for Mr. Gonzales, who was with Ms. Villagran, at the time she witnessed the suspects get into the car. The Court finds that trial counsel was not ineffective with regards to this alleged error as trial counsel brought up the inconsistency of Ms. Villagran's previous testimony, drawing out her statement that she reported only seeing one person getting into the car to the police near the time of the incident. (Rep. Tr. at 447-48.) More importantly, counsel elicited the witness' statement that "[i]t happened fast and I'm not for sure," regarding the number of suspects who got into the car. (Id. at 448.) The Court rejects Petitioner's assertion regarding Mr. Gonzales' testimony

as speculative; Petitioner had not provided any evidence that Mr. Gonzales would have testified differently, such as an affidavit from Mr. Gonzales. Regardless, even if Mr. Gonazlaes had testified as Petitioner suggested, his testimony is not reasonably likely to have changed the verdict against Petitioner as Ms. Villagran already admitted that she was not sure how many suspects entered the car.

Additionally Petitioner contends that trial counsel should have more vigorously cross examined the prosecution lead investigator, Detective Pontecorvo. (Traverse at 11.) Such an allegation fails to state a grounds for habeas corpus relief as Petitioner fails to allege any additional information that would have been obtained from a more vigorous cross examination. Petitioner's allegation that trial counsel would have had more information upon which to proceed on cross examination if counsel had conducted any pre trial investigation is both conclusory and without any evidentiary support. Counsel quite effectively cross examined Detective Pontecorvo and cast doubt on the detective's identification of Petitioner as the suspect who ran from the vehicle. Counsel's cross examination of Detective Pontecorvo focused on the issues of Pontecorvo's ability to perceive the suspect who ran from the car, including the lack of lighting and the brief period of time in which the detective had to observe the suspect. (Rep. Tr. at 1604-1607.) Additionally, counsel questioned the detective on his failure to recognize the picture of Petitioner as the person who ran away from the car. (Id. at 1619). Detective Pontecorvo also admitted that he detained another individual for an hour to verify that individual's identity because the individual looked like the person who ran from the car. (Id. at 1622-1625.) Consequently, the Court does not find that Petitioner has established that trial counsel was deficient in counsel's cross examination of Detective Pontecorvo.

***4. Failure to Interview Guzman's Attorney***

Petitioner contends that his trial counsel's lack of due diligence deprived him of his constitutional rights, pointing to trial counsel's failure to interview co-defendant Guzman's attorney to obtain information on the defense co-defendant was planning on employing. (Traverse at 21.) The last State court to have issued a reasoned decision in this case was the Kings County Superior Court, which found that Petitioner had failed to state a claim for ineffective assistance of counsel. (Answer Ex. B). The Court does not find the State court's conclusion to be an unreasonable

application of *Strickland* as the Court finds it preposterous to require that trial counsel formally interview co-defendant's counsel to obtain co-defendant's trial strategy. The Court notes that Petitioner does not allege that trial counsel did not confer with co-defendant's counsel as there is no evidence in the record to support that proposition. Additionally, the Court notes that co-defendant's counsel would have been prevented from disclosing such information without his client's consent under the attorney-client privilege. Thus, it does not fall below reasonable professional judgement for trial counsel to have refrained from formally interviewing co-defendant's attorney. Additionally, Petitioner's own traverse admits that the defense offered by co-defendant amounted to a plea of sympathy from the jury; thus, making any coordination with Petitioner's own counsel unhelpful to Petitioner's case.

***5. Failure to Move for Separate Trial*s**

Another alleged deficiency that Petitioner faults trial counsel for is counsel's failure to move for a separate trial from co-defendants. (Traverse at 22-23.) The last State court to have issued a reasoned decision on this issue was the Kings County Superior Court, which found that Petitioner had failed to state a claim for ineffective assistance of counsel. (Answer Ex. B). The Court does not find this to be an unreasonable application of *Strickland* as Petitioner has not established that counsel's motion would have been successful. As noted by the California courts, "[g]iven the legislative preference for joinder, separate trials are usually ordered only in the face of an incriminating confession, prejudicial association with codefendants, likely confusion resulting from evidence on multiple counts, conflicting defenses, or the possibility that at a separate trial a codefendant would give exonerating testimony." *People v. Lewis*, 39 Cal.4th 970, 998 (2006). Even where there exists an incriminating confession, the trial court retains discretion to order severance. *See People v. Gamache*, 48 Cal.4th 347, 382 (2010) (quoting *People v. Box*, 23 Cal.4th 1153, 1195 (2000)). Petitioner has failed to present any argument or evidence establishing that the trial court would have exercised its discretion to sever the trials.

***6. Failure to Call Salomay Gutierrez***

Petitioner contends that among trial counsel's alleged deficiencies was counsel's failure to call Salomay Gutierrez to testify at trial. (Traverse at 9-10.) The Kings County Superior Court was

last State court to have issued a reasoned decision in this issue. (Answer Ex. B.) The Superior Court found that Petitioner had failed to state a claim for ineffective assistance of counsel. The Court finds the State court's conclusion to be an objectively reasonable application of *Strickland* as Petitioner's contention, that trial counsel's failure to call Ms. Gutierrez is deficient, is without evidentiary support. There is no declaration in the record from Ms. Gutierrez as to what she would have testified, thus rendering Petitioner's statements that Ms. Gutierrez would have testified that Petitioner was not at her home prior to the crime entirely speculative. Additionally, Petitioner has failed to establish prejudice as Ms. Gutierrez would have testified only to Petitioner's whereabouts prior to the commission of the crime. Thus, it is not reasonably likely that her testimony would have been sufficient to influence a verdict for Petitioner.

***7. Withdrawal of Meritorious Defense***

Petitioner alleges that counsel's failure to conduct an investigation and discovery resulted in the withdrawal of a potentially meritorious without ever specifying what that meritorious defense is. The Kings County Superior Court was last State court to have issued a reasoned decision in this case. (Answer Ex. B.) The Superior Court found that Petitioner had failed to state a claim for ineffective assistance of counsel. The Court finds the State court's conclusion to be an objectively reasonable application of *Strickland* as Petitioner's allegation is insufficient to obtain habeas corpus relief. This ground for relief cannot succeed as it is a conclusory allegation lacking any factual support. *See Cox v. Del Papa*, 542 F.3d 669, 6814 (9th Cir. 2008) (citing *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief")). Petitioner's general allegation, that counsel withdrew a meritorious defense, does not provide a sufficient factual basis upon which this Court can measure whether such actions were actually deficient or prejudicial.

***8. Motion for a New Trial***

On a related ground, Petitioner contends that trial court erred in denying his motion for a new trial in light of his trial counsel's ineffective assistance.[6] Approximately two weeks after the jury's

---

[6] As discussed *infra*, a claim that the trial abused its discretion cannot by itself constitute a grounds for federal habeas review.

verdict and prior to sentencing, trial counsel was arrested for a methamphetamine related offense. Petitioner was appointed new counsel, who promptly moved for a new trial on this basis. The trial court denied the motion and the California Court of Appeals affirmed the denial. The appellate court found that as trial counsel had not rendered ineffective assistance of counsel, the trial court did not abuse its discretion in denying Petitioner's motion for a new trial. The Court of Appeal stated:

> We have reviewed the transcript and have found nothing in the record to indicate that Lee was impaired and unable to provide effective assistance of counsel. In addition, we agree with the trial court's assessment of Lee's performance at trial. He presented a more than adequate defense in light of overwhelming evidence. Counsel's cross-examination of witnesses, as well as his closing argument, was well thought out, logical, and effective. As shall be discussed in issues II and III, we find no merit to those issues and find that counsel was not ineffective in areas involved with those issues.
>
> The trial court was in the best position to judge whether counsel was under the influence at trial and/or impaired to the extent that he did not provide adequate assistance of counsel. "It is undeniable that trial judges are particularly well suited to observe courtroom performance and to rule on the adequacy of counsel in criminal cases tried before them." ( *People v. Fosselman* (1983) 33 Cal.3d 572, 582.) There is nothing in the record to undermine the court's conclusions in denying the [*People v. Marsden*, 2 Cal.3d 118 (1971)] motions or the motion for new trial. Additionally, other than the one instance where defense counsel was arrested for driving under the influence, there is nothing in the record to support a finding that defense counsel had a "drug problem" during trial.

(Lod. Doc. 2 at 13.)

The Court has likewise found that counsel's performance was not deficient. Thus, the Court finds that the appellate court's decision does not constitute an objectively unreasonable application of clearly established Federal law or an unreasonable determination of facts in light of the evidence. Consequently, the Court finds Petitioner is not entitled to relief on this ground.

**B. Conspiracy Jury Instruction**

Petitioner contends that the issuance of CALJIC No. 6.11 was erroneous and violated his constitutional rights as conspiracy does not exist as an independent theory of criminal liability in California. The California Court of Appeal rejected Petitioner's contention and found that, as a matter of California law, an uncharged conspiracy may be used to prove criminal liability for the acts of a co-conspirator. (Lod. Doc. 2 at 18-19) (citing to *People v. Belmontes*, 45 Cal.3d 744, 788-89 (1988). As stated previously, this Court is bound by the California court's interpretation of its own laws; thus, the Court finds Petitioner cannot establish a violation of his constitutional rights as

California law does permit conspiracy as an independent theory of criminal liability and the issuance of CALJIC No 6.11 was not erroneous.

**C. Ground Four: Perjured Testimony**

Petitioner contends that the prosecutor used perjured testimony, namely the testimony of Shirley Villagran, in violation of his constitutional rights. Respondent contends that Petitioner's claim is procedurally defaulted. (Answer at 16-18.)

***1. Procedural Default***

The last state court to have issued a reasoned decision on this claim was the Kings County Superior Court, which stated that, "to the extent that Petitioner's second and third due process claims challenge matters which are reflected within and/or otherwise reviewable from the transcripts of the Criminal Case, habeas relief is not warranted. As recognize [in] *People v. Thurmond* (1957) 154 Cal.App.2d 797, 801, habeas corpus may not be used as a substitute for an appeal." (Answer Ex. B at 2.)

A claim is considered procedurally defaulted where the state court invokes a state procedural rule, which is adequate to support the judgment and independent of federal law, to reject a federal claim. *Coleman v. Thompson*, 501 U.S. 722, 729-730 (1991). A state procedural rule is adequate if the rule is sufficiently clear at the time of the default. *Ford v. Georgia*, 498 U.S. 411, 423 (1991). Additionally, the rule must be "firmly established and regularly followed" by the state court in order to constitute an adequate procedural bar. *Id.* at 424-425 (finding that rule announced at time of procedural default is not firmly established); *see Wood v. Hall*, 130 F.3d 373, 377 (9th Cir. 1997) (stating that a rule is inadequate where the rule is selectively applied, ambiguous, or unsettled in the state and is not inadequate merely because the rule entails the exercise of judicial discretion); *see also Hill v. Roe*, 321 F.3d 787, 790 (9th Cir. 2003). A procedural rule is independent if it is not "interwoven with the federal law." *Michigan v. Long*, 463 U.S. 1032, 1040-1041 (1983); *see Morales v. Calderon*, 85 F.3d 1387, 1393 (9th Cir. 1996) (quoting *Coleman*, 501 U.S. at 735 (quoting *Michigan v. Long*, 463 U.S. at 1041)) ("[f]ederal habeas review is not barred if the state decision 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law'").

\\\

"[P]rocedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989) (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985)). The fact that the State court went on to reach the merits of the case does not erase the procedural bar. *See id*. at 264 n.10 (stating that, "a state court need not fear reaching the merits of a federal claim in an alternative holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law").

As procedural default is an affirmative defense, Respondent bears the burden of pleading and proving that the state procedural bar is adequate and independent while Petitioner bears the interim burden of placing the adequacy of the defense at issue. *Bennett v. Mueller*, 322 F.3d 573, 585 (9th Cir. 2003). Respondent contends that Petitioner's claim is procedurally defaulted pursuant to *In re Lindley*, 29 Cal.2d 709 (1947). (Answer at 17-18.) In actuality, the Kings County Superior Court stated that "to the extent that Petitioner's second and third due process claims challenge matters which are reflected within and/or otherwise reviewable from the transcripts of the Criminal Case, habeas relief is not warranted. As recognize [in] *People v. Thurmond* (1957) 154 Cal.App.2d 797, 801, habeas corpus may not be used as a substitute for an appeal." (Answer Ex. B at 2.) The California Court of Appeal in *Thurmond* expressly relied on the rule espoused by in *In re Berry*, 43 Cal.2d 838, 844 (1955), that defects or irregularities in the state proceeding may not be raised for the first time in a habeas corpus proceeding. *Lindley* concerns California's procedural bar against bringing sufficiency of the evidence claims on collateral review as opposed to direct review. As there was no claims of sufficiency of the evidence before the Kings County Superior Court, the King County Superior Court could not have relied upon the *Lindley* rule in rejecting Petitioner's claim. Thus, Respondent citation to *Carter v. Giurbino*, 385 F.3d 1194, 1197-1198 (9th Cir. 2004), and the Ninth Circuit's finding in *Carter* that the *Lindley* rule is is independent and adequate, is inapplicable to the instance case. Consequently, the Court finds that Respondent has failed to adequately raise the procedural bar defense to this petition by pointing to an adequate and applicable California

procedural bar. *See Wyshak v. City Nat. Bank*, 607 F.2d 824, 827 (9th Cir. 2003); *see also Bennett*, 322 F.3d at 585-586 (concluding that, "ultimate burden of proving the adequacy of the California state bar is upon the State of California"). Thus, the Court proceeds to the merits of this claim.

***2. Merits of the Claim***

The knowing use of perjured testimony against a defendant to obtain a conviction is unconstitutional. *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *see Mooney v. Holohan*, 294 U.S. 103, 112-13 (1935) (holding that prosecutor's use of perjured testimony and deliberate suppression of impeachment evidence is prosecutorial misconduct and constitutes a denial of defendant's due process rights); *see also Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002) (as amended) (stating that prosecutor "has a constitutional duty to correct evidence he or she knows is false, even if it was not intentionally submitted"). Thus, a conviction obtained through the use of testimony that a prosecutor knows or should have known is perjured must be set aside where there is any reasonable likelihood that the perjured testimony could have affected the judgment of the jury. *United States v. Agurs*, 427 U.S. 97, 103 (1976); *see also Woods v. Adams*, 631 F.Supp.2d 1261, 1278 (C.D. Cal. 2009) (citing *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) and *Earp v. Ornoski*, 431 F.3d 1158, 1171 (9th Cir. 2005) for proposition that where prosecutorial misconduct has occurred, the relevant question is whether the misconduct so infected the trial with unfairness as to make the resulting conviction a denial of due process). To prevail on this claim, Petitioner is required to show that: (1) the testimony (or evidence) was actually false; (2) the prosecutor knew or should have known that the testimony was actually false; and (3) that the false testimony was material. *United States v. Zuno-Arce*, 339 F.3d 886, 889 (9th Cir. 2006) (citing *Napue*, 360 U.S. at 269-71); *see Morales v. Woodford*, 336 F.3d 1136, 1152 (9th Cir. 2003) (stating that in order to succeed on such a claim, a habeas petitioner must first show that the testimony or evidence testimony was actually false, and then show that the prosecutor was aware of the falsity).

Here, the Court finds that even assuming Ms. Villagran committed perjury,[7] there is no reasonable likelihood that the jury's judgement was affected by the alleged perjury. As noted *supra*,

[7] Again, the Court notes that Petitioner alleges that Ms. Villagran testified differently at co-defendant's trial but has failed to provide any evidentiary support for this statement, such as a transcript of those proceedings.

the jury heard from Ms. Villagran herself that she had made previous statements inconsistent with her current allegation that there were two suspects who entered the vehicle. Additionally, at the end of her cross examination, Ms. Villagran admits that she was not sure about the number of suspects due to the speed at which the events transpired. Thus, the Court finds it highly unlikely that the jury's judgement was affected by such testimony.

***D. Ground Five: Admission of Juvenile Record***

In his last ground for relief, Petitioner argues that the trial court abused its discretion when it allowed the prosecutor to admit Petitioner's juvenile record as evidence of his gang affiliation. Respondent contends that Petitioner's claim is procedurally barred, advancing the same argument raised in the previous ground for relief. For the same reasons stated above, the Court rejects Respondent's argument and proceeds to the merits of Petitioner's argument.

An allegation that a trial court abused its discretion cannot form the basis for habeas corpus relief. *See Souch v. Schaivo*, 289 F.3d 616, 623 (9th Cir. 2002) (citing *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) for proposition that habeas relief is not available for errors of state law). In order to state a cognizable habeas claim, Petitioner must additionally allege that the state's discretionary admission of this evidence violated settled constitutional principles. *See Gonzalez v. Knowles*, 525 F.3d 1006, 1012 (9th Cir. 2008) (citing *Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000) ("A particular abuse of discretion by a state court may amount also to a violation of the Constitution, but not every state court abuse of discretion has the same effect")). Petitioner contends, in a conclusory fashion, that his constitutional right to a fundamentally fair trail was violated by the admission of his prior juvenile conviction. Petitioner seems to be alleging that evidence of his prior criminal acts constituted impermissible character evidence. The Court initially notes that this is not a settled constitutional principle as the United States Supreme Court explicitly left unanswered the question of whether a defendant's due process rights are violated by the trial court's admission of defendant's prior crimes solely to prove propensity. *See Estelle v. McGuire*, 502 U.S. 62, n.5 (1991) (stating "we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of "prior crimes" evidence to show propensity to commit a charged crime"); *see also Mejia v. Garcia*, 534 F.3d 1036, 1047 (9th Cir. 2008) (citing *Alberni v. McDaniel*, 458 F.3d 860, 863-67 (9th

Cir. 2006) in stating "we determined that admission of the propensity evidence was not contrary to clearly established law"), *cert. denied*, 129 S. Ct. 947 (2009); *Larson v. Palmateer*, 515 F.3d 1057, 1066 (9th Cir. 2008) (citing *Estelle* in stating, "[t]he Supreme Court has expressly reserved the question of whether using evidence of the defendant's past crimes to show that he has a propensity for criminal activity could ever violate due process").

Furthermore, admission of evidence does not offend due process where the evidence is relevant. *See, e.g., Estelle*, 502 U.S. at 67-70; *Boyde v. Brown*, 404 F.3d 1159, 1172 (9th Cir. 2005) (admission of evidence of prior robbery did not violate due process where prior robbery shared certain characteristics with robbery at issue). Here, the evidence of Petitioner's prior juvenile conviction was relevant to prove an element of the gang enhancement, namely Petitioner's active participation in a criminal street gang. Thus, the Court finds that Petitioner has failed to state a basis for habeas corpus relief.

**RECOMMENDATION**

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) *court* days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated: June 29, 2010** **/s/ John M. Dixon**

U.S. District Court
E. D. California

UNITED STATES MAGISTRATE JUDGE